# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEANDRE TREMAIN THOMPSON, | : | CIVIL NO: 1:15-CV-01927 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Rambo) |
| v. | : | |
| | : | |
| DANIEL S. KEEN, *et al.*, | : | |
| | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants | : | |
| | : | |

## **REPORT AND RECOMMENDATION**

**I.     Introduction.**

The *pro se* plaintiff, DeAndre Tremain Thompson ("Thompson"), commenced this lawsuit by filing a complaint and an application for leave to proceed *in forma pauperis*. After reviewing Thompson's application (*doc. 20*), the Court concludes that it should be granted. Because Thompson is proceeding *in forma pauperis*, his complaint (*doc. 1*) is subject to the provisions of 28 U.S.C. § 1915(e)(2). Pursuant to those provisions, the Court concludes that Thompson's complaint should be dismissed for failure to state a claim upon which relief can be granted. Thompson, however, should be afforded the opportunity to file an amended complaint, but only with respect to some of his claims.

**II. Factual Background and Procedural History.**

On October 5, 2015, Thompson, currently an inmate at SCI-Huntingdon, commenced this 42 U.S.C. § 1983 case by filing a complaint (*doc. 1*) and an application (*doc. 5*) for leave to proceed *in forma pauperis*. After reviewing his application, the Court directed Thompson to file a new, fully completed application for leave to proceed *in forma pauperis*, which he did on December 23, 2016. *See doc. 20*; *see also doc. 19* at 1 n.1 (explaining to Thompson that although he filed the proper application to proceed *in forma pauperis*, he failed to fully complete that application because he did not agree to paragraph number one, which states that he is "willing to pursue [his] claims in this action under the new provisions of The Prison Litigation Reform Act, understanding that pursuing [such claims] requires payment of a partial filing fee and deduction of sums from [his] prison account when funds exist until the filing fee of $350.00 has been paid in full.").

In his complaint, Thompson names the following defendants in their official and individual capacities: (1) Daniel S. Keen, former Warden of Franklin County Jail ("FCJ") ("Keen"); (2) William Bechtold, current Warden of FCJ ("Bechtold"); (3) Lionel Pierre, Booking Administrator at FCJ ("Pierre"); (4) James Sullen, Deputy Warden of FCJ ("Sullen"); (5) Michelle Weller, Deputy Warden of FCJ ("Weller"); (6) Jessica Sterner, Director at FCJ ("Sterner"); (7) Loretta J. McClure, Risk Manager for Franklin County ("McClure"); (8) Glenn Kendall, Booking

Officer at FCJ ("Kendall"); (9) Patrick Ransom, Booking Officer at FCJ ("Ransom"); (10) Valerie Sandoval, Correctional Treatment Specialist at FCJ ("Sandoval"); (11) Deanna Parks, Correctional Treatment Specialist at FCJ ("Parks"); (12) Anthony Edwards, Correctional Treatment Specialist at FCJ ("Edwards")[1]; (13) Franklin County Commissioner Robert Thomas ("Commissioner Thomas"); and (14) John Wetzel, Pennsylvania Secretary of Corrections ("Wetzel").

According to Thompson, all events relevant to his complaint occurred while he was a prisoner at FCJ to which he was first transferred from SCI-Huntingdon on April 30, 2012. *Doc. 1-1* at ¶¶ 3, 10. On this date, two FCJ booking officers, Kendall and Ransom, were given a transport order signed by a judge on April 16, 2012. *Id*. at ¶ 12. Thompson alleges that this transport order was "created under false pretense because th[e] OTN T158541-5 does not exist." *Id*. at ¶ 13. Then, on May 11, 2012, Thompson was returned to SCI-Huntingdon.[2] *Id*. at ¶ 14.

---

[1] The employees of FCJ will be collectively referred to as the "FCJ Defendants." Additionally, although Thompson alleges that Kendall and Ransom are corrections officers of the Pennsylvania Department of Corrections and assigned to the FCJ, the Court assumes for present purposes that they are employees of FCJ.

[2] Apparently, Thompson was eventually returned to FCJ because according to him, he was an inmate at FCJ at the time he filed this complaint on October 5, 2015. *Doc. 1-1* at ¶ 3. It is unclear, however, when exactly he was transferred back to FCJ. It is also unclear when exactly he was returned to SCI-Huntingdon for a second time. Nevertheless, it appears that he is currently housed at SCI-

With respect to his April 30, 2012, transfer[3] to FCJ, Thompson alleges that he was held at FCJ without preliminary arraignment, formal charges, booking, or fingerprinting, and he further alleges that he was committed to FCJ even though FCJ was never in possession of "the originating documents." *Id*. at ¶¶ 15-16. Thompson alleges that the aforementioned actions constitute violations of the Due Process Clause, Equal Protection Clause, Cruel and Unusual Punishment Clause, and the Search and Seizure Clause of the United States Constitution. *See id*. at ¶ 20. Thompson contends that he has utilized the prisoner grievance system but has had all of his grievances denied, and he seeks declaratory and injunctive relief, as well as $1,000,000 in compensatory and $1,000,000 in punitive damages against all of the defendants, jointly and severally. *Id*. at ¶¶ 18, 22-25.

---

Huntingdon.  *See doc. 15* (Thompson's notice of address change filed on November 20, 2015).

[3]   The Court notes that it is somewhat unclear whether Thompson's allegations pertain to his initial transfer to FCJ on April 30, 2012 or, rather, his subsequent transfer back to FCJ at a later unknown date. Based on a reading of the complaint, however, the Court interprets his allegations as pertaining to his initial transfer to FCJ on April 30, 2012.

**III.   Discussion.**

    **A.   Screening of *In Forma Pauperis* Complaints—Standard of Review.**

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis*. Specifically, the Court is obliged to the amended complaint pursuant to 28 U.S.C. § 1915(e)(2) which provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>     (A) the allegation of poverty is untrue; or
>     (B) the action or appeal—
>         (i) is frivolous or malicious;
>         (ii) fails to state a claim upon which relief may be granted; or
>         (iii) seeks monetary relief against a defendant who is immune from such relief.

Under Section 1915(e)(2)(B)(ii), the court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The statement required

by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and '"however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."' *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B. The Complaint Fails to State a Claim Upon Which Relief May Be Granted.

Thompson's complaint is brought pursuant to 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). To establish a claim under § 1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). The requirement that a defendant act under color of state law is essential in order to establish a claim under § 1983. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

### 1. Official-Capacity Claims against Wetzel.

The Supreme Court has held that suing an officer in his or her official capacity is in actuality a suit against the governmental entity that the officer represents. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Thus, when a state officer is sued in his official capacity, this amounts to a suit against the state itself, and state officers acting in their official capacity "are not 'persons' against whom a claim for money damages under § 1983 can be asserted." *Flores v. Dept. of Corr.*, No. 3:CV-12-1149, 2013 WL 2456011, at *5 (M.D. Pa. June 6, 2013) (citing *Will v. Mich. Depot of State Police*, 491 U.S. 58, 64 (1989); *Garden State Elec. Inspection Servs. v. Levin*, 144 Fed.Appx. 247, 251 (3d Cir. 2005)). As such, when a suit for monetary damages under § 1983 is brought against a state official in his or her official capacity, such a suit is barred by the doctrine of Eleventh Amendment immunity, which "precludes federal court jurisdiction over suits by private parties against states or their agencies unless sovereign immunity has expressly been waived." *Flores*, 2013 WL 2456011, at *5 (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *see also Morris v. Wenerowicz*, 2016 WL 1043623, at *5 (E.D. Pa. Mar. 16, 2016) (citing *Quern v. Jordan*, 440 U.S. 332, 344-45 (1979)) (noting that "[b]y enacting section 1983, Congress did not intend to abrogate Eleventh Amendment immunity). "By statute, the Commonwealth of Pennsylvania has specifically withheld its consent to be sued." *Flores*, 2013 WL

Case 1:15-cv-01927-SHR-SES   Document 21   Filed 12/29/16   Page 10 of 20


2456011, at *5 (citing 42 Pa. Cons.Stat. Ann. § 8521(b); *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981)).

Thus, Wetzel is immune from suit for both punitive and compensatory damages in his official capacity, and such claims should be dismissed. Any individual-capacity claims Thompson is raising against Wetzel will be addressed below.

    **2.    Official-Capacity Claims against Commissioner Thomas and the FCJ Defendants.**

Similarly, "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978), local government units can be sued directly for damages[4] and injunctive or declaratory relief." *Id*. at 167 n.14. "[B]ecause official capacity claims against an individual defendant are duplicative of claims brought against a municipality, 'courts sitting in the Third Circuit have dismissed defendants sued in their official capacity when the same claims are made against the municipality.'" *Rankin v. Majikes*, No. 3:CV-14-699, 2014 WL 6893693, at *6 (M.D. Pa. Dec. 5, 2014) (quoting *Dubas v. Olyphant Police Dep't*, No. 3:11-CV-1402, 2012 WL 1378694, at *4 (M.D. Pa. Apr. 20, 2012)).

---

[4] The Court notes that while local government units can be sued for *compensatory* damages, a plaintiff cannot sue local government units for *punitive* damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 269-71 (1981).

Thompson's complaint, however, does not name Franklin County as a defendant, and, therefore, dismissal of the official-capacity claims against the FCJ Defendants and Commissioner Thomas does not serve the judicial economy goal of eliminating redundant and unnecessary claims against the local governmental unit. *See Kenny v. Whitpain Twp.*, No. 96-CV-3527, 1996 WL 445352, at *3 n.2 (E.D. Pa. Aug. 6, 1996) (citing *Crighton v. Schuylkill Cnty.*, 882 F.Supp. 411 (E.D. Pa. 1995)). The official-capacity claims against the FCJ Defendants and Commissioner Thomas, therefore, should not be dismissed. Instead, Thompson should be given leave to amend his complaint, with the recommendation to him that such claims should only be asserted against Franklin County.

For Thompson's benefit, the Court notes that to the extent he chooses to amend his complaint to raise a Section 1983 claim against Franklin County, a municipality (such as Franklin County) cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691. Rather, to impose liability on the County under Section 1983, Thompson would need to demonstrate that an official municipal policy (in this case, an official policy of Franklin County) caused his injury. *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (citing *Monell*, 436 U.S. at 691) ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury."). "Official

municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* at 61.

### a. Claims for Injunctive Relief Against Warden William Bechtold and Commissioner Thomas.

Thompson also seeks injunctive relief against Bechtold and Commissioner Thomas in their official capacities. Specifically, Thompson seeks "a preliminary and permanent injunction" ordering Bechtold and Thomas to "stop detaining [him] illegally without commitment under proper legal authority and completeness of paperwork shall be verified." Doc. 1-1 at ¶ 23.

The Supreme Court has held that "[l]ocal governing bodies [and local officials sued in their official capacities] . . . can be sued directly under § 1983 for . . . injunctive relief." *Monell*, 436 U.S. at 690. Such a suit is appropriate "in those situations where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that [local governing] body's officers." *Id*. But although suits for injunctive relief against local officials in their official capacities may be appropriate in certain circumstances, the Court concludes that Thompson's request for injunctive relief against Bechtold and Thomas is moot.

It is well established that the adjudicatory power of a federal court depends upon "the continuing existence of a live and acute controversy." *Steffel v.*

*Thompson*, 415 U.S. 452, 459 (1974). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id.* at 459 n.10 (citations omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Zimmerman v. Schaeffer*, No. 1:06-CV-1893, 2008 WL 682491, at *4 (M.D. Pa. Mar. 7, 2008) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). Thus, a prisoner's transfer or release from prison moots his claims for injunctive or declaratory relief because he is no longer subject to the conditions he alleges are unconstitutional. *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003); *Abdul–Akbar v. Watson*, 4 F.3d 195, 206–07 (3d Cir. 1993).

As noted earlier in this report, however, it appears that Thompson is no longer an inmate at FCJ. He filed a notice with this Court on November 20, 2015, relaying that since he filed this complaint, he has been transferred back to SCI-Huntingdon, where he is an inmate as of this date. Thus, since he is no longer incarcerated at FCJ and there are no allegations that he is at risk of a return to FCJ, he faces no potential of continuing adverse action at the hands of Bechtold, Thomas, or any other FCJ or Franklin County officials. Consequently, his claims

for injunctive relief against Bechtold and Thomas in their official capacities[5] should be dismissed as moot.

### 3. Thompson's Individual-Capacity Claims against Defendants.

Thompson's individual-capacity claims against all of the defendants fail to state a claim upon which relief may be granted for the complete lack of any allegations regarding their personal involvement in the events described in this complaint.  It is well-established that claims pursuant to § 1983 cannot be premised on a theory of *respondeat superior*.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  *See Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976).  Stated differently, individual liability can be imposed under § 1983 only if the state actor played an affirmative part in the alleged misconduct.  *Rode*, 845 F.2d at 1207-08.  Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement.  *Id*. at 1208.

---

[5]  Thompson's claims for injunctive relief against Bechtold and Thomas in their *individual* capacities are also moot for the same reasons that the claims for injunctive relief against Bechtold and Thomas in their *official* capacities are moot.  Thus, *all* of Thompson's claims for injunctive relief should be dismissed as moot.

With respect to supervisory defendants, they also cannot be liable in a § 1983 action based merely on the theory of *respondeat superior*. *Id*. at 1207-08. A plaintiff, instead, must show—"1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations." *Hunter v. Schouppe*, No. 06-1291, 2007 WL 4554251, at *2 (W.D. Pa. Dec. 19, 2007) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir. 1997); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)); *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *see also Baker*, 50 F.3d at 1194 n.5 (noting that it is uncertain whether proof of personal knowledge, without more, provides a sufficient basis for holding a supervisor liable for a § 1983 claim).

With respect to policy-making supervisors, they may be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm[.]" *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). As well, a policy-making supervisor's failure to employ a specific supervisory practice or procedure to correct a known unreasonable risk of constitutional harm also satisfies the personal involvement requirement. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

A review of the complaint reveals no allegations of personal involvement against Wetzel, and he appears to have been sued because of his position as head of the Pennsylvania Department of Corrections. Similarly, despite alleging that Kendall and Ransom were the booking officers on April 30, 2012, Thompson fails to assert any allegations, nor do any allegations raise an inference, regarding the personal involvement of the remaining defendants in his complained of constitutional violations.

Further, the fact that Thompson alleges that he utilized FCJ's grievance procedure fails to sufficiently establish personal involvement on the part of the defendants. In some circumstances, a grievance may be sufficient to put a prison official on notice of alleged continuing abuse by other prison staff and, therefore, may show actual knowledge of an alleged constitutional violation and acquiescence in the events forming the basis of a prisoner's claims. *See Atkinson v. Taylor*, 316 F.3d 257, 270-71 (3d Cir. 2003) (refusing to hold as a matter of law that correspondence or conversations with prison officials do not constitute sufficient evidence of actual knowledge and acquiescence); *Diaz v. Palakovich*, 448 Fed.Appx. 211, 215 (3d Cir. 2011) (holding that summary judgment for the defendants was improper where the defendants had knowledge through the grievance process of an alleged ongoing practice of improper handling of the plaintiff's mail and the defendants failed to take corrective action). But a

grievance about events that happened in the past and that are not ongoing is not sufficient to raise an inference that the officials or administrators who answered that grievance were involved in the alleged underlying unconstitutional conduct. *See Brooks v. Beard*, 167 Fed.Appx. 923, 925 (3d Cir. 2006) ("Although the complaint alleges that Appellees responded inappropriately to Brooks's later-filed grievances about his medical treatment, these allegations do not establish Appellees' involvement in the treatment itself."). Notably, although inmates have a right to seek redress of grievances as part of their right of access to the courts, such right is not infringed by the failure of prison officials to address those grievances. *Booth v. King*, 346 F.Supp.2d 751, 761 (E.D. Pa. 2004). This is because inmates do not have a constitutionally protected right to a grievance procedure. *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-38 (1977). Although Thompson alleges that he filed a grievance after the events at issue had transpired, he fails to allege that any of the defendants were involved in the grievance review process or that they had any connection with his grievances whatsoever. Because the complaint fails to allege the defendants' requisite personal involvement, it fails to state a claim upon which relief may be granted. Thompson's complaint against the defendants in their individual capacities, therefore, should be dismissed.

### C. Thompson Should be Granted Leave to File an Amended Complaint as to Some of his Claims.

Before dismissing a complaint for failure to state a claim upon which relief may be granted under the screening provision of 28 U.S.C. §1915, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). In light of the liberal-amendment requirement, although this review recommends dismissal of the complaint, Thompson should be granted a final opportunity to comply with the requirements of Federal Rule of Civil Procedure 8 and file an amended complaint, asserting proper claims. For the reasons set forth above, however, the Court concludes that it would be futile to grant Thompson leave to amend the complaint as to his claims against Wetzel in his official capacity and his claim for injunctive relief against Bechtold and Commissioner Thomas.

### IV. Recommendation.

Based on the foregoing, **IT IS RECOMMENDED** that Thompson's application (*doc. 20*) for leave to proceed *in forma pauperis* be **GRANTED** and that his complaint (*doc. 1*) be **DISMISSED. IT IS FURTHER RECOMMENDED** that his previously filed application (*doc. 5*) for leave to proceed *in forma pauperis* be **DENIED** as moot. **IT IS FINALLY RECOMMENDED** that Thompson be given leave to file an amended

complaint,[6] but only as to his individual-capacity claims against the defendants and his official-capacity claims against the FCJ Defendants and Commissioner Thomas.

> The Parties are further placed on notice that pursuant to Local Rule 72.3:
>
> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

---

[6] The Court notes that any amended complaint must be titled as an amended complaint and must contain the docket number of this case. Any amended complaint must be complete in all respects. It must be a new pleading that stands by itself as an adequate complaint without reference to the complaint already filed. Any amended complaint will completely replace the original complaint. If an amended complaint is filed, the original complaint will have no role in the future litigation of this case. Any amended complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure. Further, in accordance with Federal Rule of Civil Procedure 10(b), Thompson shall plead his claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **29th** day of **December**, **2016**.

                                        *S/Susan E. Schwab*
                                        Susan E. Schwab
                                        United States Magistrate Judge